## DE WITT v. REPUBLIC NAT. BANK OF DALLAS et al.
### No. 13313.

Court of Civil Appeals of Texas. Dallas.

Jan. 8, 1943.

Rehearing Denied Feb. 19, 1943.

Earl E. Hurt, of Dallas, and E. M. Critz, of Coleman, for appellant.

Eugene DeBogory, of Dallas, and Wagstaff, Harwell, Douthit & Alvis, of Abilene, for appellees.

LOONEY, Justice.

R. B. DeWitt, as Receiver of the Centennial Oil & Gas Company, a Texas corporation, appointed by the District Court of Coleman County, brought this action against the Republic National Bank, the Republic National Company, the North South Oil Company, corporations, and a number of individuals, to have adjudged null and void the sale of certain properties by a former receiver of said Company, appointed by and acting under the orders of a District Court of Dallas County; also to recover the amount of revenues derived from the operation of the properties, and $200,000, double the amount of alleged usurious interest collected from the Company. Plaintiff declining to amend, after the court sustained special exceptions to his petition, the suit was dismissed, from which this appeal was prosecuted.

Plaintiff's petition is lengthy, consisting of a chronological detail of transactions between the parties, beginning in 1931, the dominant features of which are: That on and prior to February 18, 1931, the Texas American Syndicate, an unincorporated association managed by H. H. Tucker, sole trustee, was engaged in drilling oil wells on lands—68 separate tracts, situated in Coleman and Runnels Counties. Being indebted and desiring additional capital to prosecute its drilling enterprise, the Syndicate employed Mr. Smithdeal, an attorney, one of the defendants, to negotiate a loan of $200,000, and, after a time, Smithdeal reported that he had succeeded in negotiating the loan with Republic National Bank & Trust Company (name later changed to Republic National Bank), and advised Tucker, trustee, that the loan would have to be evidenced by notes aggregating $300,-000, of which $200,000 was to be secured by a mortgage on the leases and oil drilling accessories belonging to the Syndicate; and $100,000 (alleged to be interest) was to be secured by an overriding royalty. Thereafter, the Syndicate, through Tucker, trustee, executed three notes payable to Mr. Smithdeal, one for $117,000, one for $83,-000, both secured by a mortgage on the leases and drilling accessories, and another for $100,000, secured by an assignment of an overriding royalty. Mr. Smithdeal transferred the note for $117,000 to E. P. Greenwood and the other two were transferred to Republic National Company, a corporation; it being alleged that nothing was advanced or paid for the $100,000 note; that the Syndicate did not obtain possession of any of the money borrowed, but same remained in the Bank, and that, prior to July 1, 1931, the Republic National Company caused the Centennial Oil & Gas Company to be chartered, and named a majority of its directors, being Smithdeal, W. F. Tyree and W. H. Shook; Tucker, trustee of the Syndicate, also became a director; that the Bank and Republic National Company demanded that all properties of the Syndicate be transferred to the Centennial, and on July 21, 1931, Tucker, trustee of the Syndicate, transferred said properties to the Centennial in consideration of a block of its stock and the assumption by the grantee of the payment of the outstanding notes, aggregating $300,000; that thereafter, the other directors refused to permit Tucker to have any part in the management of its affairs, but assumed full control, with the end in view of eventually obtaining title to its properties; that defendants Florence and Davis, who controlled the Bank and the Republic National Company, caused the Bank to advance $83,-000 on the outstanding note for that amount, and to acquire from Greenwood, at its face value, the note for $117,000; also to ac-

quire the note for $100,000,—all for the consideration of $200,000; the petition characterized said transactions as ultra vires, usurious, and a fraud by the Bank and the Republic National Company upon the Centennial; and that, while said officers purported to act for the Bank and the Republic National Company, at the same time they acted for and controlled the Centennial, for the purpose of defrauding the latter Company in the interest of the Bank and Republic National Company.

Plaintiff alleged further that on June 29, 1934, in cause No. 9533–D, Vojnar et al. v. Centennial Oil & Gas Co., pending in the 95th District Court of Dallas County, George B. Ray was appointed receiver of all and singular the assets of the Centennial and qualified as such, and that thereafter, on June 26, 1936, the court ordered the receiver to sell at public auction said properties; the sale to be made on November 3, 1936, at the court house door of Coleman County, after due advertisement; that on November 1, 1936, by an order entered, the court extended the time of sale to February 2, 1937; that on December 31, 1936, by an order duly entered, the court transferred said cause to the 14th Judicial District Court of Dallas County, and that on February 1, 1937, the latter court, by an order duly entered, postponed the sale of the properties to March 2, 1937, being the first Tuesday, and on March 1, the day previous thereto, George B. Ray's resignation as receiver of the Centennial having been accepted, the court appointed John C. Harris receiver in lieu, who immediately qualified and was ordered by the court to consummate the sale on March 2, 1937, as previously advertised by Ray; and accordingly, on March 2, 1937, in accordance with the previous orders of court, and as advertised by receiver Ray, Mr. Harris, as receiver, sold the properties at public auction at the court house door of Coleman County, the Republic National Bank becoming the purchaser thereof; and later, on March 22, 1937, the sale was duly confirmed by the 14th Judicial District Court of Dallas County; and that, by virtue of said proceedings, receiver Harris conveyed all and singular said properties to the Republic National Bank by two deeds, one dated March 25, 1937, reciting a consideration of $241,000 paid, and the other dated August 6, 1937, reciting $50 paid; alleging that, as a matter of fact, neither of said amounts nor any part thereof was ever paid (at this juncture in the petition, certain allegations characterizing the proceedings mentioned as being void and without legal effect, for reasons not mentioned here, but will appear later in this opinion).

It was also alleged that on August 10, 1939, the Bank conveyed the properties purchased at the receiver's sale to the North South Oil Company, for the recited consideration of $235,000; that since said conveyance, the grantee has operated the properties and has taken therefrom oil and gas in excess of the value of $500,000; alleging further that said Company was organized on July 19, 1939, by defendants Smithdeal, Shook and Oscar Cooper for the purpose of taking title to said properties, and that said Company has paid to the Bank in excess of $235,000; that the Bank and individual defendants have appropriated all the oil and gas produced from said properties; characterizing said acts as illegal, by reason of the invalidity of the receiver's sale.

Plaintiff then alleged, although not in proper sequence, that Florence and Davis, by conniving (acts constituting conniving not alleged), after securing the appointment of George B. Ray receiver of the Centennial, assisted by Smithdeal and Tyree (officers of the Centennial), caused Ray, receiver, to permit leases on various tracts of land to become forfeited for nonpayment of rentals, solely to enable the parties to repurchase the leases from the landowners, and that, thereafter, a son of Mr. Tyree, at the instance of his father and of Smithdeal, Florence and Davis, re-leased the lands, the same being later transferred to North South Oil Company for chartering purposes; characterizing such conduct as fraudulent and conceived for the purpose of defrauding the Centennial and the Syndicate; again alleging that the receiver's sale, the confirmation thereof by the court, and the conveyance to the Bank executed in pursuance thereof, were all void and that the value of said properties had been diminished, by reason of the operation since the sale, to the extent of $500,000.

Plaintiff referred to the judgments and orders of court by volume and page and made each a part of the petition; also referred to all documents mentioned by referring to the volume and page of the records; concluding with a prayer that, the order of sale of June 26, 1936, the extensions thereof, the transfer of the cause by the 95th District Court to the 14th District, and its orders subsequently made, the

receiver's sale and the confirmation thereof, and the conveyance executed thereafter, be adjudged void and without legal effect; that plaintiff, as receiver, recover the properties; also prayed for an accounting for the oil and gas taken therefrom, and judgment for $200,000, double the amount of the alleged usurious interest collected by the Bank from the Centennial.

At several places in his brief, plaintiff disavowed any purpose to question the validity of the judgment of the 95th District Court, rendered June 26, 1936, establishing the Bank's debt against the Centennial Oil & Gas Company and foreclosing the mortgage lien upon the properties involved.; asserting that the purpose of the suit was to have the property in question adjudged to plaintiff as receiver of the Centennial, on the ground that the order of the 95th District Court, transferring the receivership proceedings to the 14th District, was void, hence the latter court obtained no jurisdiction, and all subsequent orders entered by it, also the sale of the properties by the receiver to the Bank on March 2, 1937, as well as the confirmation thereof by the court, were void (see point 1, p. 7, plaintiff's brief); again defined his position on page 12 of his brief, and expressed willingness for sale of the properties under proper procedure (see p. 24, brief).

Accepting plaintiff's theory as to the nature of his suit, did he allege a cause of action entitling him to the relief sought? In his pleading, plaintiff referred to the judgment of the 95th District Court rendered June 26, 1936, the subsequent orders of said court, including the order of transfer of the cause to the 14th District and all orders of the latter court, including the order confirming sale of the properties by the receiver to the Bank; referring to volumes and pages of the record, making same a part of the pleading. The judgment of June 26, 1936, was rendered in the receivership proceedings in which the assets of the Centennial Company were in the hands of George B. Ray, receiver, in which the Bank intervened, seeking judgment for the unpaid balance of the original notes that aggregated $300,000, held by the Bank against the Centennial, the payment of which having been assumed by it on purchasing the properties from The Texas American Syndicate. The judgment discloses that the Bank's claim was approved by the Master in Chancery appointed in the receivership case, evidenced by two notes, one for $96,-019.20, with interest and attorney's fees (that aggregated $122,280.30 on March 2, 1937, the date of the sale), with foreclosure of the existing mortgage lien on the oil and gas leases, drilling accessories and improvements; the other note was for $94,-585.59, with interest and attorney's fees (that aggregated the sum of $121,636.32 on March 2, 1937, the date of sale), with foreclosure of the existing lien on a 10% overriding royalty on the oil and gas in said properties. The record further discloses that at the hearing resulting in the judgment, all parties, that is, the Bank, the receiver of the Centennial Oil & Gas Company, and a stockholder of the Centennial, representing himself and all other stockholders similarly situated, were represented by attorneys, and it seems that neither fraud, as alleged by plaintiff, nor usury was urged as a defense to the Bank's claim.

In view of plaintiff's disclaimer of any purpose to attack or set aside the judgment of June 26, 1936, we think it follows inescapably that all allegations in regard to fraud, conniving, etc., between the corporations and individuals, antedating the judgment, must be disregarded as having no proper place in the lawsuit, for if fraud, as alleged by plaintiff, existed, or if usury existed as an available defense, the same was concluded by the adjudication of that date.

As heretofore stated, plaintiff attacks all proceedings had for the sale of the properties under the judgment of June 26, 1936, contending that the same could not have been legally sold by any person other than Mr. Ray, the receiver, and that the transfer of the receivership proceedings by the 95th District Court to that of the 14th District was utterly void; that the latter court acquired no jurisdiction, was without authority to extend the time for the sale of the properties, was not authorized to appoint Harris receiver upon the resignation of Ray, and that, all proceedings had subsequent to the rendition of the original judgment on June 26, 1936, including the sale of the properties by the receiver to the Bank and the confirmation thereof on March 22, 1937, were each and all void.

We are unable to accept plaintiff's views in regard to these matters. We know of no rule of law, and have been cited to none, that would prevent the transfer of a receivership from one court to another, the same as any other suit or proceeding. The several district courts of Dallas County op-

erate under the provisions of the Practice Act applicable thereto (see Art. 2092, R.C.S., Vernon's Ann.Civ.St. art. 2092). The judge of each court is given authority in his discretion to exchange benches or districts to try and determine in his own courtroom any case or proceeding pending in any other court without having same transferred; to sit in any other of said courts and hear any case there pending; to issue restraining orders and injunctions returnable to any other court or judge, and transfer any cause or proceeding, pending in his own court, to any other court, and the judge of any other court, to which a case or proceeding is transferred, shall receive and try the same, and in turn is authorized in his discretion to transfer any such cause to any other of said courts. The effect of the provisions of this statute, in our opinion, obliterates all distinction between the civil district courts of Dallas County and constitutes each a part of a greater judicial organism. In De Zavala v. Scanlan, Tex.Com.App., 65 S.W.2d 489–494, appealed from a district court of Harris County, controlled by the provisions of the Practice Act, Judge Smedley, speaking for the Supreme Court, used the following pertinent language; he said: "The judge of any such court may issue restraining orders and injunctions returnable to any other judge or court, and any judge may transfer any case or proceeding pending in his court to any other of said courts, and the judge of any court to which a case or proceeding is transferred shall receive and try the same, and in turn shall have power in his discretion to transfer any such case to any other of said courts and any other judge may in his court room try any case pending in any other of such courts." Also see Hendricks v. Kopecky, Tex.Civ.App., 133 S.W.2d 837. We therefore overrule plaintiff's contentions under consideration and hold that the several orders of the 95th District Court and of the 14th District, called in question, are valid and immune from the attacks made upon them.

Plaintiff contends, however, that the sale of the properties by the receiver to the Bank should be set aside because, as he alleges, (a) prior to March 2, 1937, the date of the receiver's sale, the Bank had been fully paid the amount of its debt against the Centennial; (b) the properties were never advertised to sell on any date subsequent to November 3, 1936; and (c) the Bank did not comply with the order of the court approving the sale, in that, did not pay the amount of its bid or any part thereof. These allegations grouped as a, b and c, in our opinion, are in conflict with and contradict the prior record, that is, the report of sale to the Bank by Harris, receiver, and the confirmation thereof by the court; hence should not be given any effect in determining the legal sufficiency of plaintiff's petition. The report of the sale to the Bank by Harris, receiver, shows that it was made March 2, 1937, at the court house door of Coleman County, in accordance with the preceding orders of court. The report set out in detail the material portions of the judgment of June 26, 1936, in which the Bank recovered against the Centennial Company judgment for its debt, with foreclosure of the mortgaged liens upon the properties involved, stated the amount of the judgment and a detailed description of the properties ordered sold for its satisfaction; alleged the original order directing sale to be made on the first Tuesday in November, 1936, the order further postponing sale to the first Tuesday in February, 1937; also the order by the 95th District Court transferring the case to the 14th District, and an order by the latter court, postponing sale to the first Tuesday (second day) of March, 1937, reciting that, for each sale day, the property was duly advertised by Mr. Ray, receiver; and particularly, the report shows that the properties were advertised to sell on the first Tuesday in March by posting notices for 21 days at the court house doors of Coleman, Runnels and Taylor Counties, Texas, and two copies at two other places in each of said counties; and, in addition, was advertised in three successive Sunday issues of the Dallas Morning News prior to March 2, 1937. The report also shows the resignation of George B. Ray as receiver on March 1, 1937; its acceptance by the court, the appointment of John C. Harris, receiver in lieu, and an order of court directing him, as receiver, to consummate the sale on March 2, 1937, in accordance with the advertisement by Ray, preceding receiver; further reporting that, at the sale, the Bank became the purchaser of the properties on two bids; that is, $120,000 cash for the 10% overriding royalty in the properties and $121,000 for the remainder of the properties, consisting of the leases, accessories and improvements; sale subject to confirmation by the court; reporting further that the receiver said, after due inquiry and investigation, he believed the

Bank's bids were the best obtainable and recommending confirmation of the sale; continuing, the report contained the following: "Wherefore, your receiver prays that inasmuch as it appears that under the term of said decree at the time of said sale there was then due and owing to said Republic National Bank of Dallas the sum of $121,636.32, principal, interest and attorney's fees, on the indebtedness evidenced by said note for $94,585.59, which was secured by a lien on the said 10% overriding royalty of the oil and gas in said properties, that your receiver be permitted to apply on said judgment the sum of $120,000 bid by Republic National Bank of Dallas for the 10% overriding oil and gas royalty in and to the aforesaid properties as aforesaid. And that whereas said decree directs that under the terms of said decree on the aforesaid note of $96,019.20 secured by a lien of the deed of trust on all of the property, which together with principal, interest and attorney's fees on March 2, 1937, amounted to $122,280.30 that he be directed to apply on said indebtedness, in accordance with said decree, the said $121,000 on the said indebtedness of $122,280.30, so secured on all of said properties under the terms of said deed of trust." In connection with the report, the receiver attached the form of a deed conveying the properties to the Bank, and prayed that if approved by the court, the same be delivered to the Bank upon receipt of an acquittance by it of its debt against the Centennial Company to the extent of the bids made for the properties; and that the same should be received as payment and satisfaction of the Bank's debt to that extent. The record, that is, the judgment of the court confirming the sale, discloses that the report was contested, that evidence was heard, but on March 22, 1937, the contest was overruled, the report of the receiver was approved and the sale confirmed, authorizing the receiver to execute a deed to the Bank in substantial form as the one attached to the report, which stated substantially that, in consideration of the premises and of $241,000 cash paid (the aggregate of the two bids) by the Bank, receipt of which was acknowledged, the properties were conveyed by the receiver to the Bank.

■ In view of these recitals, we think it obvious that plaintiff's allegations to the effect that, prior to the sale of the properties by the receiver to the Bank on March 2, 1937, its judgment against the Centennial Oil & Gas Company had been fully paid; that the properties were never advertised to sell on any date subsequent to November 3, 1936, and that the Bank failed to comply with the court's order approving the sale, in that, it did not pay the receiver the amount bid for the properties, or any part thereof, not only contradict, and are wholly inconsistent with, the purport and meaning of the preceding record, but, by implication, impeach the good faith of the receiver, in that, it is implied that he sold property to satisfy a judgment already paid, executed and delivered a deed conveying the property to the Bank, reciting a paid consideration of $241,000 cash, whereas nothing was paid. It must be remembered that the receiver is an officer of court, acts under oath, and all favorable presumptions must be indulged as to the rectitude of his official conduct; besides, the allegations also impliedly attack the action of the court in ordering Harris, receiver, under the alleged circumstances, to proceed with the sale of the properties, and in approving the sale. We are of opinion, therefore, that because plaintiff's allegations in avoidance of the conveyance to the Bank are contradictory of and in conflict with the prior record, they must be disregarded.

■ It is now well settled that an appellate court may take judicial cognizance of the record in the original case, even without its being referred to, as in the instant case, and any fact averred in the new proceedings inconsistent with or contradictory of the pleadings or judgment in the original case will be given no effect in determining the legal sufficiency of the pleading under consideration. See Cochran County v. Boyd, Tex.Civ.App., 26 S.W.2d 364, writ refused; Bickle v. City of Panhandle, Tex.Civ.App., 43 S.W.2d 640, writ refused; Griffith v. Tipps, Tex.Civ.App., 69 S.W.2d 846; Davis v. Donalson, Tex. Civ.App., 91 S.W.2d 763, 766, appeal dismissed; Butler v. Church, Tex.Civ.App., 110 S.W.2d 145; Barrow, Wade, Guthrie & Co. v. Stroud, Tex.Civ.App., 125 S.W.2d 365.

■ Besides, before plaintiff could hope to recover the properties in question, the deed of the receiver conveying same to the Bank would have to be set aside. To such an action, the four years' statute of limitation is applicable. The record discloses that the order of the 14th District

Court, confirming the receiver's sale to the Bank and directing that deed be made accordingly, was entered on March 22, 1937, and, as alleged by plaintiff, the properties were conveyed by the receiver to the Bank in two deeds, dated the 25th day of March, 1937, and the ——— day of August, 1937, respectively. As the suit was not instituted until January 21, 1942, it follows that the right of plaintiff, as receiver, to avoid the deed, if such right ever existed, was clearly barred prior to the institution of the suit. See McCampbell v. Durst, 15 Tex.Civ.App. 522, 40 S.W. 315; Deaton v. Rush, 113 Tex. 176, 252 S.W. 1025, Com. op. adopted by Sup.Ct.; Lott v. Van Zandt, Tex.Civ.App., 107 S.W.2d 761.

Plaintiff also insists that the sale should be set aside because not made by the receiver (George B. Ray) originally authorized to make same, but was consummated by Harris, appointed receiver after the property was advertised by the preceding receiver.

■■■ As heretofore shown, the properties were duly advertised by Mr. Ray to sell on the first Tuesday (second day) of March, 1937, but Ray having resigned on March 1, Harris was appointed receiver instead, and was directed by the court to complete the sale, which was done, with the result as heretofore shown. We overrule this contention. The ruling principle involved is announced in 23 R.C.L. (subject Receivers), p. 74, Sec. 79, as follows: "Successive Receivers.—So long as the property of a corporation remains in the custody of the court and is administered through the agency of a receiver, such receivership is continuous and uninterrupted until the court relinquishes its hold upon the property, though its personnel may be subject to repeated changes." Also see Clark on Receivers, p. 351, Sec. 267; p. 484, Sec. 371.

As heretofore mentioned, usury as a defense to the Bank's claim against the Centennial Company was concluded by the judgment of June 26, 1936; however, plaintiff, as receiver, seeks, in a statutory action, to recover from the Bank $200,000, double the amount of the alleged usurious interest collected from the Centennial Company. The court below sustained exceptions to the plea, (1) because the claim appeared to be barred by the two years' statute of limitation, and (2) because the Centennial Oil & Gas Company, having assumed payment of the alleged usurious indebtedness on its purchase of the properties from The Texas American Syndicate, the transaction was purged of usury. Plaintiff assigns error on the action of the court in the respects mentioned.

■■■ The record discloses that the final collection of money by the Bank from the Centennial Oil & Gas Company could not have been later than March 25, 1937, the consummation of the sale by the receiver to the Bank, thereby extinguishing, or in other words collecting, $241,000 of its judgment against the Centennial Company, being the amount bid for the property. As this suit was not instituted until January 21, 1942, more than two years after the alleged collection of usury, the statutory action was not maintainable (See Art. 5073, R.C.S.).

It also appears that the original three notes, aggregating $300,000, executed by The Texas American Syndicate, payable to Mr. Smithdeal (secured by liens on the properties), were transferred by him, one to a Mr. Greenwood, and two to the Republic National Company, and later, by these parties, were transferred to the Republic National Bank and subsequently were assumed by the Centennial Company on its purchase of the properties from The Texas American Syndicate.

■■■ These transactions, in our opinion, purged the original loan of usury. The ruling principle is stated in 27 R.C.L., p. 288, Sec. 89, as follows: "A vendee who as a part of the purchase price assumes and agrees to pay a mortgage on the property sold, is estopped from asserting that the obligation secured thereby is usurious. This is particularly true where the promise to pay is included in the deed. The whole title of the vendee rests upon the conveyance, and the continued existence of the mortgage, as an incumbrance, forms a part of it. He cannot be permitted to claim title both under and against the same deed; to insist upon its efficacy to confer a benefit, and repudiate a burden with which it is qualified; to affirm a part and reject a part." Also see Bookhout v. McGeorge, Tex.Civ.App., 65 S.W.2d 512, 517, appeal dismissed; National Bond & Mortgage Corp. v. Mahanay, 124 Tex. 544, 80 S.W.2d 947, opinion by Com. adopted by Sup.Ct.

Finding no reversible error, the judgment of the court below is affirmed.

Affirmed.

On Motion for Rehearing.

Rehearing denied.

BOND, Chief Justice (dissenting).

I am not in accord with the majority. The plaintiff, appellant here, is entitled to his day in court. As against demurrers, we must assume that the allegations in plaintiff's petition are true, thus it does not rest with this court or the trial court to adversely decide the facts, or, dehors the record, determine the issues in advance of trial.

Plaintiff's suit, evidenced by his petition from beginning to end, is not to set aside the judgments of the two District Courts of Dallas County—the 95th and the 14th—affecting the real estate and personal property described in plaintiff's petition. The petition merely relates the invalidity of the judgments and the lack of jurisdiction of the courts, by which the possession of his property was surreptitiously taken, and by which the title thereto still remains in the plaintiff; for which, through its receiver, it seeks recovery.

The receiver alleges all the facts leading up to the judgments and orders of the courts, which, if true, no one can gainsay that the entire transaction by which plaintiff was deprived of his property, no innocent person intervening, should not be set aside. Judgments and orders of courts are not immune to just attack for fraud in their procurement by interested parties.

Summarizing briefly: On and prior to July 1, 1931, Texas American Syndicate, a corporation, then being the owner of the lands in suit, became involved in financial difficulties, necessitating the borrowing of $200,000 to carry on its oil and gas well operations on lands described in this suit. The corporation being then managed by a trustee, the trustee secured a loan from the defendants named in the suit, by executing notes in the sum of $300,000, secured by liens on the Syndicate's properties, $100,000 of which is claimed by plaintiff to be usury. Immediately or soon thereafter, the lender and lienholder caused the Centennial Oil & Gas Company to be formed, solely for the purpose of taking over the properties and business affairs of the Texas American Syndicate, selecting its own directors and attorneys and proceeded to manage and control the affairs of the new corporation, independent of the trustee then acting. Thus the lender and borrower, under the controlling agencies, became in fact the same interested parties, which plaintiff claims is illegal, usurious, ultra vires, a fraud perpetrated by the lender and its allied associates, and done for the sole purpose of defrauding the Centennial out of $100,000 and the properties in suit; and, in fact, did so defraud it. The fraudulent plan and scheme of defendants and their allies was recited in detail, severally alleged, naming the party defendants, the time of such fraudulent acts and their resulting effects upon the properties involved in suit, which I deem unnecessary to relate. Suffice to say, as against demurrers, the allegations were sufficient to carry the issue to a trier of facts—court or jury.

The petition further alleges that in 1934, in the 95th District Court, in suit of Joseph Vojnar et al. v. Centennial Oil & Gas Co., the defendant being under the dominant control of the holder and owner of the notes and liens, an order was made appointing, or purporting to appoint, one George B. Ray receiver of said defendant, Centennial Oil & Gas Company, to take charge of and administer its properties and assets and, at the same time, the court appointed an attorney for the receiver and a Master in Chancery—all done at the instance of the holder of the notes and liens and its allied agencies and associates named in the petition. Under such appointment, the receiver took immediate possession of all of said properties, including the properties in this suit, and began administration of the estate under the control and orders of said court and in pursuance of said appointment and authority of the 95th District Court. Thereafter, on June 26, 1936, that court heard and determined the amount due and owing to the Republic National Bank, the lender of the money and the holder and owner of the aforesaid notes and liens, and directed its receiver to sell all the property described in said orders. Whereupon, the receiver, under such orders advertised the sale of said properties by posting notice of sale to be had on the first Tuesday in November, 1936; and again on October 31, 1936, the court ordered the time of said sale changed and extended to the first Tuesday in February, 1937, instead of November, as aforesaid. During the pendency of the enforcement of these orders, the Judge of the 95th Court, on December 31, 1936, made and entered another order purporting to transfer said

cause, Vojnar v. Centennial, supra, to the 14th District; and on February 1, 1937, that court made its order purporting to postpone the sale of the properties belonging to the Centennial as fixed by the 95th District Court, from February 2, 1937, to March 2, 1937. And thereafter, on March 1, 1937, the aforesaid receiver resigned and the Judge of the 14th Court (instead of the 95th Court) accepted his resignation and appointed another in his stead. The last appointed receiver qualified and made the purported sale of said properties and executed deeds to the defendant Bank under the authority and orders of the 14th District Court. Plaintiff's petition sets out in detail the various transactions, reciting that the consideration stated in the report of sale and deeds executed thereunder was never paid; that at the time of such sale, the Centennial owed the Bank nothing on the indebtedness; that all the notes had been paid; that no notice of sale was posted as required by law, and that the purported sale was made to defraud the Centennial of its properties—engineered and promoted by the Bank's officials and its allied defendants named in the petition. Quoting verbatim from the petition:

"Plaintiff further says that all said proceedings were void and without any legal effect, and that said deeds conveyed no title or rights to said grantee, Republic National Bank of Dallas, for the following reasons, to wit: (a) That said order of June 26, 1936, if the same ever had any validity or was lawful, which is not admitted but denied, thereafter became void and was not the basis of any sale and did not furnish any ground or authority for such sale because same was never carried out by the receiver, George B. Ray, the only person authorized by said order to execute the same or to advertise said property for sale thereunder. (b) Because said order of June 26, 1936, was in effect set aside and annulled by the subsequent order of this Court of October 31, 1936, purporting to extend the time of said sale to the first Tuesday in February, 1937. (c) Because said sale as purported to have been authorized by said order of June 26, 1936, and October 31, 1936, was never affected by the receiver authorized thereby to make said sale and to advertise said sale and was not made on the dates authorized and directed by either of said orders. (d) Because the purported order of the 14th District Court of date February 1,

1937, directing that the sale be postponed for thirty days from February 2, 1937, to March 2, 1937, was void and said 14th District Court had no jurisdiction of said matter or of said cause, in that the order of December 31, 1936, made by this court purporting to transfer said cause to the 14th District Court was void and without authority of law, and said 95th District Court had no authority or power to transfer said cause to the 14th District Court or to invest said 14th District Court with jurisdiction to postpone the date of said sale as theretofore made or to assume control and jurisdiction of said receiver's proceedings at that stage, or to set aside and alter the orders theretofore made by the 95th District Court, and that said order of December 31, 1936 so transferring this cause to the 14th District Court, and the order of said 14th District Court of February 1, 1937, were each void and without authority of law and made without jurisdiction on the part of said courts of the matter covered by said orders. (e) That the order of said 14th District Court of March 1, 1937, purporting to authorize and direct said John C. Harris as such receiver succeeding said George B. Ray to make sale on the day following, that is, on March 2, 1937, of said properties was void and without any legal effect because of the matters and facts hereinabove alleged and the want of jurisdiction on the part of said 14th District Court, and because said sale had been advertised by George B. Ray, said advertisement stating that the sale would be made by George B. Ray, and that said advertisement made in pursuance of the previous purported orders of said 14th District Court was incompetent to confer upon another person, to wit, John C. Harris, the authority to make said sale. (f) And because said order of March 1, 1937, was void as being made by the 14th District Court, having no jurisdiction of said receivership proceeding or the matter covered by said order. (g) And that said purported order of the 14th District Court of March 22, 1937, purporting to confirm the report of said sale and authorize the said John C. Harris as such receiver to convey said properties in pursuance of said report and said pretended sale was itself void because said 14th District Court was without jurisdiction of the matters covered by said order or of said report, same being a matter then and theretofore within the exclusive jurisdiction of the 95th District Court."

Plaintiff further contends, and I am in accord with his contention, that the Practice Act, Art. 2092, R. S., with amendments thereto, Vernon's Ann.Civ.St.Art. 2092, especially Secs. 21, 22 and 24, does not authorize the transfer of a case from one court to another for the sole purpose of entering interlocutory orders. Section 21 provides for an exchange of benches, thereby implying that the judge of one court could sit in another court and render judgment as of the court in which he sits, and that he could exercise such powers as the other judge could in that court. He would be acting for the court of exchange and all orders and judgments made are directed to be entered in the minutes of that court. This section further provides that a judge of one court can grant a restraining order or injunction returnable to another court, and transfer "any case or proceeding pending in his court to any other of said courts." A "case" means an entire lawsuit with the subject-matter and parties involved therein, and not merely some interlocutory or ancillary proceeding to the suit. Indeed a "proceeding" could involve a separate and distinct phase of a case, but it must take the form and effect of a conclusive action. Manifestly this statute does not authorize the transfer from one court to another in administrative proceedings by a receiver. Section 22 provides that when a judge in any one of the courts is not engaged, he shall notify the presiding judge of the district, and the presiding judge shall transfer "the next case" which is ready for trial. It also provides that any judge not engaged in his own court "may try any case in any other court." This provision empowers the "judge" to act in "any case" in the "court" where the case is pending. Section 24 provides that "any judge" may hear any part of any case pending in any of said courts and determine the same; or that he may hear and determine any question in any case, and that "any other judge" may complete the hearing and render judgment. This statute clearly implies that the case in which "the judge" acts shall remain in the court where the case is pending. The mere fact that the judge may be authorized to hear and determine cases pending in another court does not in itself make his action that of his own court, for a judge may be empowered by law to do many things which cannot be regarded as in any sense the action of the court. Nalle v. Austin, 101 Tex. 48, 104 S.W. 1050. There is nothing in the Practice Act contemplating that cases shall be transferred from one court to another for the purpose of making interlocutory orders, and certainly nothing to authorize such transfer after one court has assumed jurisdiction and extended its power to the extent of appointing a receiver and ordering and fixing a date for a sale of the impounded properties. The 95th District Court, which, for the purpose of this suit, had jurisdiction of this case, had determined the issues, appointed a receiver to make the sale of the assets and prescribed the terms and conditions of the sale. Then, on the "face of the record," independent of the recitations in the judgments and orders of the 14th District Court, which were not introduced in evidence, and should not have been considered by the trial court or the majority in this court, plaintiff has a right to offer proof on trial showing the invalidity of action of the 14th Court. Such orders of the 14th District Court, as shown by plaintiff's petition, if true, were void and cannot be the basis to convey the property in suit. It will be seen from the petition that the orders and judgment of the 95th Court were never carried out by any receiver appointed by that court, and no subsequent valid order was ever made for the sale of the properties in March 1937. Appellant was entitled to make proof, if he may, of the validity of the orders by which the property was attempted to be sold. Evidently, plaintiff's cause of action was not barred by limitations, as held by the trial court and affirmed by the majority here. Only the ten-year statute of limitation could effectively bar plaintiff's suit.

Whether plaintiff will be able to prove the allegations in his petition is beside the question; and whether the orders and judgments of the 14th District Court, as to notice for the sale of the land, were or were not given, cannot be determined by the recitation in the judgment and order. If notice of sale was not given or posted, as required by law, or the debt had been paid before sale and no consideration passed to the receiver, such are questions of fact to be established on trial of the case. The judgments and orders are not conclusive of the facts recited therein. I respectfully dissent from the majority. Cause should have been reversed and remanded for trial.